UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER CALLOWAY, individually, and on behalf of members of the general public similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AFFILIATED COMPUTER SERVICES, INC., a Delaware Corporation; XEROX CORPORATION; a New York Corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | No.: 2:13-cv-01648-KJM-DAD<br><br><br><br>ORDER |

This matter is before the court on plaintiff Amber Calloway's motion to remand the case to the Sacramento County Superior Court. (Pl.'s Mot. Remand, ECF 5.) Defendants Xerox Business Services, LLC ("XBS") (allegedly erroneously sued as Affiliated Computer Services, Inc.) and Xerox Corporation oppose the motion. (Defs.' Opp'n, ECF 9.) Also before the court is plaintiff's request for costs and attorney fees. (ECF 5.) The court decided this motion without a hearing. As explained below, the court GRANTS plaintiff's motion to remand and DENIES plaintiff's request for costs and attorney fees.

/////

/////

1

I.      INTRODUCTION AND PROCEDURAL BACKGROUND

On September 27, 2013, plaintiff Amber Calloway filed a putative class action complaint in the Sacramento County Superior Court against defendants Affiliated Computer Services, Inc. and Xerox Corporation. Plaintiff alleges four causes of action: (1) violation of California Labor Code section 1194; (2) violation of California Labor Code sections 201 and 202; (3) violation of California Labor Code section 226(a); and (4) violation of California Business and Professions Code section 17200. (Defs.' Notice of Removal, Compl., Ex. A ("Compl."), ECF 1.) On December 20, 2012, Xerox Corporation filed an answer, and on March 14, 2013, XBS filed an amended answer.[1] (Defs.' Notice of Removal, Ex. B, ECF 1.)

On August 9, 2013, defendants removed the case, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(b). (ECF 1.) On September 9, 2013, plaintiff filed the instant motion to remand. (ECF 5.) On September 27, 2013, defendants filed an opposition. (ECF 9.) On October 4, 2013, plaintiff filed a reply.

II.     LEGAL STANDARD

The removal statute provides: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by a defendant to a federal district court. 28 U.S.C. § 1441(a). CAFA vests federal courts with original jurisdiction over civil cases where: (1) the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) there is minimal diversity. 28 U.S.C. § 1332(d)(2), (d)(5)(B). "[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Moreover, because federal courts "construe the removal statute against removal jurisdiction," "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Accordingly, "the court

/////

---

[1] XBS filed its initial answer on December 20, 2012, under the name of Xerox Services, LLC.

2

1 resolves all ambiguity in favor of remand to state court." *Hunter v. Phillip Morris USA*, 582 F.3d
2 1039, 1042 (9th Cir. 2009).

3       Here, the parties do not seem to dispute the numerosity and minimal diversity
4 requirements under CAFA. Hence, the only two issues before the court are the following:
5 whether the removal was timely and whether defendants can demonstrate plaintiff is seeking
6 more than $5 million.

7 III.    DISCUSSION

8       Plaintiff argues the case must be remanded because defendants waived the right to
9 remove the case. (ECF 5 at 2.) In the alternative, plaintiff argues defendants cannot show the
10 amount in controversy exceeds $5 million as required under CAFA. (*Id.* at 5.) The court will
11 address these arguments in turn.

12     A.    Timeliness of Removal

13       Plaintiff argues defendants waived their right to remove for three reasons. First,
14 plaintiff argues defendants' notice of removal does not contain an explanation why the removal is
15 timely as required under 28 U.S.C. § 1446(a). (*Id.* at 2.) Second, plaintiff reasons defendants
16 waived their right to remove because they did not remove the case within any of the "three 30-day
17 windows." (*Id.*) Third, plaintiff argues defendants waived their right to remove because they
18 engaged in "[a]busive [g]amesmanship" by delaying the removal even though they always had
19 access to the alleged grounds of removal. (*Id.* at 3.)

20       Defendants respond they are not required to explain the details of their
21 investigation's timing in the notice of removal. (ECF 9 at 3.) They further reason the removal
22 was timely because they removed the case once their investigation revealed the amount in
23 controversy exceeded $5 million. (*Id.*) Specifically, defendants argue they "only determined the
24 amount in controversy at most two days before filing the notice of removal." (*Id.*) Finally,
25 defendants aver there are no facts to show any gamesmanship. (*Id.* at 4.)
26 /////
27 /////
28 /////

3

The removal procedure is governed by 28 U.S.C. § 1446. Subsection (a) provides the notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The timeliness of removal is governed by subsection (b). Subsection (b) identifies two thirty-day periods for removing a case. *Id.* § 1446(b).

To trigger the first thirty-day period, the facts supporting removal must appear on the face of the complaint. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That is, removability must be evident from the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* If grounds for removal are not clear from an initial pleading, defendant's subjective knowledge of the relevant facts does not trigger the first thirty-day period for removal. *Id.* Moreover, a defendant has no duty to investigate and to ascertain removability grounds even if the complaint contains "clues" to removability. *Id.* at 696-97; *see also Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) ("Removals invoking CAFA jurisdiction are equally subject to this rule."). This bright-line rule serves important jurisdictional and procedural purposes: it brings certainty and predictability in the removal process and prevents secondary "litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Harris*, 425 F.3d at 697.

The second thirty-day period is triggered when a defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability grounds may first be ascertained, and when the initial pleading did not disclose facts supporting removal. 28 U.S.C. § 1446(b)(3). These two periods act "as limitations on the right to remove," yet they "do not otherwise affect the time during which a defendant *may* remove." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (emphasis in original). That is, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal . . . may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.*

Here, plaintiff argues that defendants' notice of removal is deficient because "no mention is made as to how or why [d]efendants' removal is timely," (ECF 5 at 2) and because the

4

notice of removal "fails to explain" the reasons it took defendants "316 days" to investigate. (ECF 5 at 3-4.) This argument is unavailing because 28 U.S.C. § 1446(a) requires only the grounds for removal be stated in a "short and plain statement." Here, the court finds the facts in the notice of removal sufficient for the court to determine whether it has jurisdiction.

Next, plaintiff argues because "all of the data points [d]efendants used to calculate the amount-in-controversy were in [d]efendants' possession, custody, and control when [p]laintiff filed her [c]omplaint in Septmeber 2012," "[d]efendants waived their right to remove by failing to remove 'within 30 days after the receipt . . . of a copy of the initial pleading.'" (ECF 5 at 3 (quoting 28 U.S.C. § 1446(b)(1)).)

Defendants respond "that a defendant may also remove a case when it discovers, based on its own investigation, that a case is removable," and removal under such circumstances is not subject to the thirty-day rule under 28 U.S.C. § 1446(b)(1). (ECF 9 at 2-3.)

Here, plaintiff's allegations on the face of the complaint are not sufficiently clear to have triggered the first thirty-day period. The complaint expressly states: "The total amount in controversy for each class representative . . . is less than $75,000. The total amount in controversy . . . is less than $5,000,000." (Compl. ¶ 1, ECF 1.) The complaint further provides: "the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of [d]efendants' employment records." (*Id.* ¶ 29(a).) Finally, in the last paragraph of the complaint under the prayer for relief section, plaintiff reiterates that the amount in controversy for the class representative is less than $75,000, and the total amount of damages is less than $5 million. (*Id.* ¶ 20.) The complaint on its face does not reveal an amount in controversy sufficient to support jurisdiction under CAFA. Indeed, the complaint on its face supports the contrary proposition because it expressly states in more than one place that plaintiff seeks damages less than $5 million.

Moreover, defendants had to look beyond the complaint to determine the removability grounds. Specifically, Mary Kelly, a Human Resources Analyst for Xerox Corporation, avers she used Xerox Corporation's information systems to ascertain the number of persons "separated from employment between September 27, 2009 and July 3, 2013" and

5

1  identified that number as 520. (Kelly Decl. Supp. Removal ¶ 3, ECF 1-2.) Then, she sought to
2  determine the average hourly pay rate for the same individuals and determined it to be $20.83.
3  (*Id.* ¶ 4.) Robert Berry, a Systems Consult Senior Analyst for XBS, states he ran the same queries
4  for XBS and Xerox State Healthcare, LLC ("Xerox State"), and learned the number of separated
5  employees to be 465 and 374, respectively. (Berry Decl. Supp. Removal ¶¶ 3-4, ECF 1-3.) The
6  average pay rate for those separated employees was $14.01. (*Id.* ¶ 5.) Although "[m]ultiplying
7  figures clearly stated in a complaint" does not impose a burden to investigate jurisdictional facts
8  on a defendant, *Kuxhausen*, 707 F.3d at 1140, here, defendants did more than that.

9  As the declarations indicate, defendants ascertained the number of potential class
10 members and their pay rates not "through examination of the four corners" of plaintiff's
11 complaint, but from defendants' "subjective knowledge" and "further inquiry." *Harris*, 425 F.3d
12 at 694. Accordingly, because the grounds for removal were not evident affirmatively from
13 plaintiff's complaint, the first thirty-day clock does not act as a limitation on defendants' right to
14 remove. *See Kuxhausen,* 707 F.3d at 1139 ("To avoid saddling defendants with the burden of
15 investigating jurisdictional facts, we have held that 'the ground for removal must be revealed
16 affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to
17 begin.'") (quoting *Harris*, 425 F.3d at 695); *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) ("We
18 find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial
19 complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess
20 of the federal jurisdictional amount.").

21 Finally, plaintiff argues defendants waived their right to remove because they
22 engaged in "abusive gamesmanship" by delaying removal although the grounds for removal, as
23 indicated by the declarations of defendants' employees, were always in defendants' possession.
24 (ECF 5 at 3-4.) Defendants respond there are no facts to indicate any gamesmanship. (ECF 9 at
25 4.) Both sides rely on *Roth v. CHA Hollywood Medical Center., L.P.*, 720 F.3d 1121 (9th Cir.
26 2013).
27 /////
28 /////

1  In *Roth*, the plaintiff employee filed "a state-law wage-and-hour class action" in Los Angeles Superior Court on April 27, 2011. *Id.* at 1123. On May 24, 2012, the plaintiff amended the complaint and added CHA Hollywood Medical Center ("CHA") as a defendant, and on September 4, 2012, CHA removed the case, invoking jurisdiction under CAFA. *Id.* Because the complaint did not disclose there was diversity or a sufficient amount in controversy, CHA investigated its own files to find potential class members. *Id.* at 1125. As a result of its investigation, CHA located a potential class member who signed a declaration stating her citizenship, which established the diversity requirement. *Id.* To establish the amount in controversy requirement, CHA consulted its Vice President of Human Resources and General Counsel, who declared the amount in controversy to be in excess of $5 million. *Id.*

The plaintiff in *Roth* moved to remand. *Id.* at 1123. The district court granted the motion, holding removal was not allowed because it was not based on information contained in the complaint or in some other document provided by the plaintiff. *Id.* The district court found the removal improper because "even if the jurisdictional requirements of CAFA . . . had been satisfied, . . . neither of the thirty-day periods specified in § 1146(b)(1) or (b)(3) had been triggered by documents received from plaintiffs." *Id.* at 1123-24.

The Ninth Circuit reversed the district court's decision:

> We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines. For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.

*Id.* at 1125. The Ninth Circuit reiterated that "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.*

7

In holding so, the Ninth Circuit recognized "one practical objection." *Id.* at 1126. "It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the 'initial pleading' nor any later document received from plaintiff triggers one of the two thirty-day periods." *Id.* "It is thus at least theoretically possible in a CAFA case for a defendant to wait until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court, before filing a notice of removal." *Id.* Hence, "the theoretical possibility of abusive gamesmanship remains." *Id.* "Our best answer—and a likely sufficient answer—is that plaintiffs are in a position to protect themselves" by providing "to the defendant a document from which removability may be ascertained." *Id.*

In light of the *Roth* decision, plaintiff here cannot show defendants' removal is untimely. Rather, the removal is timely because defendants removed the case within one year of the commencement of the case; the case is in its early stages as no case management conference had been held in the state court yet (Van Parys Am. Decl. ¶ 4, ECF 10.); there are no facts to indicate the state court was "ill-disposed" to defendants; and neither of the two thirty-day periods have been triggered. Accordingly, although "the theoretical possibility of abusive gamesmanship remains," *Roth*, 720 F.3d at 1126, that is not what has happened in this case. Winning the timeliness battle, however, does not alone win the removal war.

B.   Amount in Controversy

Defendants contend the amount in controversy exceeds $5 million. (ECF 1 at 3.) To substantiate this contention, defendants rely on the declarations of Mary Kelly, Robert Berry and Jennifer Taggard. Mary Kelly declares when she ran a query asking the system to report the number of individuals employed in non-exempt positions by Xerox Corporation in California that were separated from employment between September 27, 2009 and July 3, 2013, the system provided 520 individuals. (ECF 1-2 ¶ 3.) Next, she ran a query asking the system to report "the average hourly rate of pay" for such individuals, and the system "reflected an hourly wage of $20.83 . . . ." (*Id.* ¶ 4.)

Robert Berry followed the same procedures as Mary Kelly and ascertained the number of individuals employed by XBS in California that were "separated from employment

1  between September 27, 2009 and July 10, 2013" to be 465. (ECF 1-3 ¶ 3.) In addition, Robert
2  Berry ascertained the number of individuals employed by Xerox State that were "separated from
3  employment between September 27, 2009 and July 10, 2013" to be 374. (*Id.* ¶ 4.) He "asked the
4  system about Xerox State . . . because . . . [p]laintiff . . . was employed by Xerox State . . . which
5  is a subsidiary of XBS." (*Id.*) Then, he "ran queries in the system asking it to report the average
6  hourly rate of pay" for such individuals, and the report reflected an hourly wage of $14.01. (*Id.*
7  ¶ 5.) Jennifer Taggard, the Human Resources Account Manager in the West Sacramento office of
8  Xerox State, declares plaintiff was an employee of Xerox State because Xerox State paid plaintiff
9  her wages, plaintiff was provided a security badge, and plaintiff followed a work schedule
10 prepared by Xerox State management. (Taggard Decl. ¶¶ 2-5.)

11       Defendants use this information in making the following calculation: "$16.63/hr x
12 8 hrs = $133.04/day x 30 days = $3,991.20 x 1,359 separated employees = 5,424,040.80." (ECF
13 1 at 4.) First, they add the number of employees as provided by the declarants: 520 + 465 + 374
14 = 1,359. Next, they use an hourly rate of $16.63 and multiply it by 8 hours per day, which equals
15 to $133.04 per day. Defendants use this hourly rate because it is "the weighted hourly rate
16 between XBS's 839 separated employees, who were paid an average hourly rate of $14.01, and
17 Xerox Corp.'s 520 separated employees, who were paid an average hourly rate of $20.83." (*Id.*
18 n.2.) Then, they multiply $133.04 by 30 days, which equals $3,991.20. Defendants use 30 days
19 because they argue "[e]ach of these employees, by virtue of [d]efendants' allegedly willful failure
20 to pay all wages earned and due at separation, would be entitled to receive 30 days of waiting
21 time penalties calculated at his or her regular hourly rate of pay pursuant to California Labor
22 Code section 203." (*Id.*) Finally, defendants multiply $3,991.20 by 1,359, to reach the sum of
23 $5,424,040.80. This is the manner in which defendants purport to show the amount in
24 controversy exceeds $5 million. (*Id.*)

25       Plaintiff presents two major objections to defendants' calculations. First, plaintiff
26 argues she has sued only two entities, Affiliated Computer Services, Inc. and Xerox Corporation,
27 and defined the class to include separated employees who worked only for those two entities.
28 (ECF 5 at 9.) Hence, plaintiff argues, defendants may not "improperly amend [p]laintiff's

9

complaint by alleging class-size figures related to two entirely different entities—Xerox State Healthcare LLC and XBS." (*Id.*)  Second, plaintiff argues defendants' use of maximum statutory penalties is unfounded and speculative. (*Id.* at 10.)

In a recent case, the Ninth Circuit held in CAFA cases "the proper burden of proof imposed upon a defendant to establish the amount in controversy requirement is the preponderance of the evidence standard." *Rodriguez v. AT & T Mobility Servs. LLC*, No. 13-56149, 2013 WL 4516757, at *1 (9th Cir. Aug. 27, 2013).  This standard requires a defendant to provide evidence establishing "the plaintiff is more likely than not" to recover in excess of $5 million. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (internal quotations omitted).  That is, a district court may not find a defendant has met the preponderance of the evidence standard based on defendant's mere speculation and conjecture. *Garibay v. Archstone Communities LLC*, No. 13-56151, 2013 WL 4517934, at *2 (9th Cir. Aug. 27, 2013).

In evaluating whether defendants meet their burden in the instant case, the court reviews the reliability of the variables defendants use to calculate the amount in controversy as exceeding $5 million. The court's review demonstrates defendants do not meet their burden for the following reasons.

First, defendants' use of Xerox State's separated employees is not justified because plaintiff, being "the master of the complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987), did not name Xerox State as a defendant, nor did plaintiff define the potential class as including Xerox State's separated employees.  Rather, plaintiff has named only Affiliated Computer Services, Inc. and Xerox Corporation as defendants.  Defendants' argument that Xerox State is XBS's subsidiary is unavailing in the absence of any legal authority to support consideration of entities not named as defendants in a complaint to establish the amount in controversy.  On the other hand, defendants' argument that XBS's employees should be considered in the calculations is supported by the record before the court because defendants may rely on summary judgment-type evidence to establish the amount in controversy requirement at the time of removal.  *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  Here, the record discloses that plaintiff propounded the following request for admission: "Admit that

1   Affiliated Computer Services, Inc. did not employ [plaintiff] . . . ." (ECF 10, Ex. A at 3.) XBS
2   responded as follows: "Deny. Affiliated Computer Services, Inc. hired [p]laintiff Amber
3   Calloway. . . . Affiliated Computer Services, Inc. . . . changed its name to Xerox Business
4   Services, LLC on April 1, 2012." (*Id.*) Accordingly, adding 465 (the number of XBS's separated
5   employees) to 520 (the number of Xerox Corporation's separated employees), the number of the
6   potential class is 985. Using this number in defendants' formula, the amount in controversy
7   would be $3,931,332.[2] As this amount is below CAFA's jurisdictional threshold, defendants
8   cannot "demonstrate, by a preponderance of evidence, that the aggregate amount in controversy
9   exceeds the jurisdictional minimum." *Rodriguez*, 2013 WL 4516757, at *6.

10              Second, as plaintiff contends, defendant's calculations are based on unsupported
11  assumptions. In *Garibay*, the court reasoned when the only support for the defendants'
12  calculation was a "declaration by their supervisor of payroll, which set[] forth only the number of
13  employees during the relevant period, the number of pay periods, and general information about
14  hourly employee wages," such statements were insufficient to satisfy defendants' burden. 2013
15  WL 4517934, at *1. As in *Garibay*, defendants here rely on alleged violations of California
16  Labor Code section 203 to establish an amount in controversy requirement (ECF 1 ¶ 7). Section
17  203 provides: "If an employer willfully fails to pay . . . any wages of an employee who is
18  discharged or who quits," the employee's wages "shall continue as a penalty from the due date
19  thereof at the same rate until paid or until an action therefor is commenced; but the wages shall
20  not continue for more than 30 days." CAL. LAB. CODE § 203. Also as in *Garibay*, the
21  declarations provided by defendants here do not explain their use of the weighted hourly wage of
22  the separated employees. Moreover, defendants do not provide "summary-judgment-type"
23  evidence to support their assumptions that maximum penalties are owed and that the separated
24  employees all worked on a full-time basis rather than part-time. (*See* ECFs 1-2, 1-3.) *Cf. Rea v.*
25  *Michaels Stores Inc.*, __ F.3d __, 2014 WL 607322 (9th Cir. Feb. 18, 2014) (per curiam) (in
26  CAFA case, amount in controversy requirement satisfied by class members' testifying they

27  ---
    [2] The court does not reach the validity of the other calculations included in defendant's formula,
28  as doing so would not alter the conclusion reached here.

1  actually "did work 45 hours or more each week" meaning damages exceeded $5 million
2  threshold).
3        Because any doubts as to the right of removal are resolved in favor of remand, the
4  court finds without prejudice that defendants have not met their burden of establishing by
5  preponderance of the evidence the amount in controversy exceeds the jurisdictional amount. *See*
6  *Roth*, 720 F.3d at 1123; *Gaus*, 980 F.2d at 566.
7        C.      Request for Costs and Attorney Fees
8        Plaintiff's motion to remand seeks reasonable attorney fees and costs associated
9  with bringing the instant motion. (ECF 5 at 14.)  Defendants respond they "had a reasonable
10 basis for filing their notice of removal . . . ." (ECF 9 at 10.)
11       Title 28 U.S.C. § 1447(c) provides: "An order remanding the case may require
12 payment of just costs and any actual expenses, including attorney fees, incurred as a result of the
13 removal."  There is no automatic entitlement to such an award; the award lies within a district
14 court's sound discretion. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005).  In
15 exercising its discretion, a district court must consider the propriety of the removal: "Absent
16 unusual circumstances, courts may award attorney's fees under § 1447(c) only where the
17 removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an
18 objectively reasonable basis exists, fees should be denied." *Id.* at 141.
19       The court finds that an award of attorney fees and costs is not warranted in this
20 case.  Defendants removed, reasoning the removal was timely under the recent Ninth Circuit
21 decision in *Roth*. 720 F.3d at 1125.  Because this court has found defendants' removal timely,
22 plaintiff's untimeliness argument cannot support a conclusion of objective unreasonableness.
23 Further, defendants' calculation is not objectively unreasonable in light of another recent Ninth
24 Circuit decision in *Rodriguez*. *See*  2013 WL 4516757, at *1.  Accordingly, the court denies
25 plaintiff's request for attorney fees and costs.
26 /////
27 /////
28 /////

## IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff's motion to remand is GRANTED and the matter is remanded to the Sacramento County Superior Court.
2. Plaintiff's request for costs and attorney fees is DENIED.

IT IS SO ORDERED.

Dated: February 24, 2014.

_____
UNITED STATES DISTRICT JUDGE